**Lee M. SEILER, Plaintiff-Appellant,**

v.

**LUCASFILM, LTD., Industrial Light and Magic, Twentieth Century-Fox Film Corporation, George Lucas, Jr., and Joseph E. Johnston, Defendants-Appellees.**

No. 85–1955.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 17, 1986.
Decided Aug. 26, 1986.
Modified Jan. 26, 1987.

Bronson, Bronson & McKinnon, Elliot L. Bien, San Francisco, Cal., for plaintiff-appellant.

Nutter, Bird, Marella, Boxer, Wolpert & Matz, Joel Boxer, Los Angeles, Cal.; and Keker & Brockett, John Keker and Robert Van Nest, San Francisco, Cal., for defendants-appellees.

* Honorable Judith N. Keep, United States District Judge, Southern District of California, sitting by

Before FARRIS and BOOCHEVER, Circuit Judges, and KEEP,* District Judge.

FARRIS, Circuit Judge:

Lee Seiler, a graphic artist and creator of science fiction creatures, alleged copyright infringement by George Lucas and others who created and produced the science fiction movie "The Empire Strikes Back." Seiler claimed that creatures known as "Imperial Walkers" which appeared in The Empire Strikes Back infringed Seiler's copyright on his own creatures called "Garthian Striders." The Empire Strikes Back appeared in 1980; Seiler did not obtain his copyright until 1981.

Because Seiler wished to show blown-up comparisons of his creatures and Lucas' Imperial Walkers to the jury at opening statement, the district judge held a pre-trial evidentiary hearing. At the hearing, Seiler could produce no originals of his Garthian Striders nor any documentary evidence that they existed before The Empire Strikes Back appeared in 1980. The district judge, applying the best evidence rule, found that Seiler had lost or destroyed the originals in bad faith under Fed.R.Evid. 1004(1) and denied admissibility of any secondary evidence, even the copies that Seiler had deposited with the Copyright Office. With no admissible evidence, Seiler then lost at summary judgment.

## FACTS

Seiler contends that he created and published in 1976 and 1977 science fiction creatures called Garthian Striders. In 1980, George Lucas released The Empire Strikes Back, a motion picture that contains a battle sequence depicting giant machines

designation.

called Imperial Walkers. In 1981 Seiler obtained a copyright on his Striders, depositing with the Copyright Office "reconstructions" of the originals as they had appeared in 1976 and 1977.

Seiler contends that Lucas' Walkers were copied from Seiler's Striders which were allegedly published in 1976 and 1977. Lucas responds that Seiler did not obtain his copyright until one year after the release of The Empire Strikes Back and that Seiler can produce no documents that antedate The Empire Strikes Back.

Because Seiler proposed to exhibit his Striders in a blow-up comparison to Lucas' Walkers at opening statement, the district judge held an evidentiary hearing on the admissibility of the "reconstructions" of Seiler's Striders. Applying the "best evidence rule," Fed.R.Evid. 1001–1008, the district court found at the end of a seven-day hearing that Seiler lost or destroyed the originals in bad faith under Rule 1004(1) and that consequently no secondary evidence, such as the post-Empire Strikes Back reconstructions, was admissible. In its opinion the court found specifically that Seiler testified falsely, purposefully destroyed or withheld in bad faith the originals, and fabricated and misrepresented the nature of his reconstructions. The district court granted summary judgment to Lucas after the evidentiary hearing.

On appeal, Seiler contends 1) that the best evidence rule does not apply to his works, 2) that if the best evidence rule does apply, Rule 1008 requires a jury determination of the existence and authenticity of his originals, and 3) that 17 U.S.C. § 410(c) of the copyright laws overrides the Federal Rules of Evidence and mandates admission of his secondary evidence.

The appeal was timely; this court has jurisdiction under 28 U.S.C. § 1291. Review of summary judgment is *de novo*. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). The issues presented are questions of law, reviewable *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984) (en banc).

## DISCUSSION

1. Application of the best evidence rule.

The best evidence rule embodied in Rules 1001–1008 represented a codification of longstanding common law doctrine. Dating back to 1700, the rule requires not, as its common name implies, the best evidence in every case but rather the production of an original document instead of a copy. Many commentators refer to the rule not as the best evidence rule but as the original document rule.

Rule 1002 states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Writings and recordings are defined in Rule 1001 as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."

The Advisory Committee Note supplies the following gloss:

> Traditionally the rule requiring the original centered upon accumulations of data and expressions affecting legal relations set forth in words and figures. This meant that the rule was one essentially related to writings. Present day techniques have expanded methods of storing data, yet the essential form which the information ultimately assumes for usable purposes is words and figures. Hence the considerations underlying the rule dictate its expansion to include computers, photographic systems, and other modern developments.

Some treatises, whose approach seems more historical than rigorously analytic, opine without support from any cases that the rule is limited to words and figures. 5 *Weinstein's Evidence* (1983), ¶ 1001(1) [01] at 1001–11; 5 Louisell & Mueller, § 550 at 285.

We hold that Seiler's drawings were "writings" within the meaning of Rule 1001(1); they consist not of "letters, words,

or numbers" but of "their equivalent." To hold otherwise would frustrate the policies underlying the rule and introduce undesirable inconsistencies into the application of the rule.

In the days before liberal rules of discovery and modern techniques of electronic copying, the rule guarded against incomplete or fraudulent proof. By requiring the possessor of the original to produce it, the rule prevented the introduction of altered copies and the withholding of originals. The purpose of the rule was thus long thought to be one of fraud prevention, but Wigmore pointed out that the rule operated even in cases where fraud was not at issue, such as where secondary evidence is not admitted even though its proponent acts in utmost good faith. Wigmore also noted that if prevention of fraud were the foundation of the rule, it should apply to objects as well as writings, which it does not. 4 Wigmore, *Evidence* § 1180 (Chadbourn rev. 1972).

The modern justification for the rule has expanded from prevention of fraud to a recognition that writings occupy a central position in the law. When the contents of a writing are at issue, oral testimony as to the terms of the writing is subject to a greater risk of error than oral testimony as to events or other situations. The human memory is not often capable of reciting the precise terms of a writing, and when the terms are in dispute only the writing itself, or a true copy, provides reliable evidence. To summarize then, we observe that the importance of the precise terms of writings in the world of legal relations, the fallibility of the human memory as reliable evidence of the terms, and the hazards of inaccurate or incomplete duplication are the concerns addressed by the best evidence rule. *See* 5 Louisell & Mueller, *Federal Evidence*, § 550 at 283; *McCormick on Evidence* (3d ed. 1984) § 231 at 704; Cleary & Strong, The Best Evidence Rule: An Evaluation in Context, 51 Iowa L.Rev. 825, 828 (1966).

■ Viewing the dispute in the context of the concerns underlying the best evidence rule, we conclude that the rule applies. McCormick summarizes the rule as follows:

> [I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent.

*McCormick on Evidence* § 230, at 704.

The contents of Seiler's work are at issue. There can be no proof of "substantial similarity" and thus of copyright infringement unless Seiler's works are juxtaposed with Lucas' and their contents compared. Since the contents are material and must be proved, Seiler must either produce the original or show that it is unavailable through no fault of his own. Rule 1004(1). This he could not do.

The facts of this case implicate the very concerns that justify the best evidence rule. Seiler alleges infringement by The Empire Strikes Back, but he can produce no documentary evidence of any originals existing before the release of the movie. His secondary evidence does not consist of true copies or exact duplicates but of "reconstructions" made after The Empire Strikes Back. In short, Seiler claims that the movie infringed his originals, yet he has no proof of those originals.

The dangers of fraud in this situation are clear. The rule would ensure that proof of the infringement claim consists of the works alleged to be infringed. Otherwise, "reconstructions" which might have no resemblance to the purported original would suffice as proof for infringement of the original. Furthermore, application of the rule here defers to the rule's special concern for the contents of writings. Seiler's claim depends on the content of the originals, and the rule would exclude reconstituted proof of the originals' content. Under the circumstances here, no "reconstruction" can substitute for the original.

Seiler argues that the best evidence rule does not apply to his work, in that it is artwork rather than "writings, recordings, or photographs." He contends that the

rule both historically and currently embraces only words or numbers. Neither party has referred us to cases which discuss the applicability of the rule to drawings.[1]

To recognize Seiler's works as writings does not, as Seiler argues, run counter to the rule's preoccupation with the centrality of the written word in the world of legal relations. Just as a contract objectively manifests the subjective intent of the makers, so Seiler's drawings are objective manifestations of the creative mind. The copyright laws give legal protection to the objective manifestations of an artist's ideas, just as the law of contract protects through its multifarious principles the meeting of minds evidenced in the contract. Comparing Seiler's drawings with Lucas' drawings is no different in principle than evaluating a contract and the intent behind it. Seiler's "reconstructions" are "writings" that affect legal relations; their copyrightability attests to that.

■ A creative literary work, which is artwork, and a photograph whose contents are sought to be proved, as in copyright, defamation, or invasion of privacy, are both covered by the best evidence rule. *See* McCormick, § 232 at 706 n. 9; Advisory Committee's Note to Rule 1002; 5 Louisell & Mueller, § 550 at 285 n. 27. We would be inconsistent to apply the rule to artwork which is literary or photographic but not to artwork of other forms. Furthermore, blueprints, engineering drawings, architectural designs may all lack words or numbers yet still be capable of copyright and susceptible to fraudulent alteration. In short, Seiler's argument would have us restrict the definitions of Rule 1001(1) to "words" and "numbers" but ignore "or their equivalent." We will not do so in the circumstances of this case.

Our holding is also supported by the policy served by the best evidence rule in protecting against faulty memory. Seiler's

reconstructions were made four to seven years after the alleged originals; his memory as to specifications and dimensions may have dimmed significantly. Furthermore, reconstructions made after the release of the Empire Strikes Back may be tainted, even if unintentionally, by exposure to the movie. Our holding guards against these problems.

#### 2. Rule 1008.

As we hold that the district court correctly concluded that the best evidence rule applies to Seiler's drawings, Seiler was required to produce his original drawings unless excused by the exceptions set forth in Rule 1004. The pertinent subsection is 1004(1), which provides:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—
>
> > (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith...

In the instant case, prior to opening statement, Seiler indicated that he planned to show to the jury reconstructions of his "Garthian Striders" during the opening statement. The trial judge would not allow items to be shown to the jury until they were admitted in evidence. Seiler's counsel reiterated that he needed to show the reconstructions to the jury during his opening statement. Hence, the court excused the jury and held a seven-day hearing on their admissibility. At the conclusion of the hearing, the trial judge found that the reconstructions were inadmissible under the best evidence rule as the originals were lost or destroyed in bad faith. This finding is amply supported by the record.

Seiler argues on appeal that regardless of Rule 1004(1), Rule 1008 requires a trial because a key issue would be whether the

---

**1.** Lucas argues that Seiler's work, involving painting and photographic processes, is photography and therefore under the explicit reach of rule 1001. But the pleadings, Lucas' memoran- da in opposition to summary judgment, and the district judge's initial references all characterize Seiler's work as drawings.

reconstructions correctly reflect the content of the originals. Rule 1008 provides:

When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of rule 104. However, when an issue is raised (a) whether the asserted writing ever existed, or (b) whether another writing, recording, or photograph produced at the trial is the original, or (c) whether other evidence of contents correctly reflects the contents, the issue is for the trier of facts to determine as in the case of other issues of fact.[2]

■ Seiler's position confuses admissibility of the reconstructions with the weight, if any, the trier of fact should give them, after the judge has ruled that they are admissible. Rule 1008 states, in essence, that when the *admissibility* of evidence other than the original depends upon the fulfillment of a condition of fact, the trial judge generally makes the determination of that condition of fact. The notes of the Advisory Committee are consistent with this interpretation in stating: "Most preliminary questions of fact in connection with applying the rule preferring the original as evidence of contents are for the judge ... [t]hus the question of ... fulfillment of other conditions specified in Rule 1004 ... is for the judge." In the instant case, the condition of fact which Seiler needed to prove was that the originals were not lost or destroyed in bad faith. Had he been able to prove this, his reconstructions would have been admissible and then their accuracy would have been a

question for the jury. In sum, since admissibility of the reconstructions was dependent upon a finding that the originals were not lost or destroyed in bad faith, the trial judge properly held the hearing to determine their admissibility.

3. Does 17 U.S.C. § 410(c) require the admission of the copies of Seiler's work deposited at the Copyright Office?

Seiler contends that § 410(c) of the Copyright Act mandates the admission of his reconstructions in evidence despite the district court's ruling that they are excluded under the best evidence rule. Section 410(c) provides:

In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

■ Seiler argues that this section requires the admission of the copyright certificate he obtained on his reconstructions in 1981 and, more importantly, the attached "work" that Seiler claims is incorporated in the certificate by reference.[3] We hold that § 410(c) has no application here, because the certificate of copyright has no bearing upon the ultimate facts Seiler seeks to prove by its submission.

Section 410(c) makes the copyright certificate prima facie evidence of "the validity of the copyright and of the facts stated in the certificate." Seiler's copyright claims

---

2. Lucas conceded the originals existed and Seiler conceded the items he sought to introduce were not the originals. Hence, as subsections (a) and (b) are not in issue, Seiler is arguing that 1008(c) requires that the case be submitted to the jury.

3. The certificate attests: "This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work below." The certificate gives the title of the work as "GARTHIAN CULTURE (2 PARTS)," and certifies that it was created in 1976 and first published on June 1, 1977, by Inland Printing Co. The certificate is a form, apparently completed by the applicant.

are based entirely upon the original drawings, which he claims were first published in 1977. He has sought to present his reconstructed drawings as a substitute for the originals that apparently no longer exist. To accomplish this, he must show that the reconstructions are virtually identical to those originals. All of the recitations in the certificate pertain to the attached "work," which is Seiler's reconstructions. None of the statements in the certificate can be of any use therefore until Seiler proves that the reconstructions are the same as the originals. Prima facie evidence of statements in the certificate is irrelevant until that proof has been made.

Moreover, the certificate obtained in 1981 and the attached reconstructions do not purport to speak on the ultimate issue of whether Seiler's reconstructions are true to the supposed originals. In fact, no indication appears on the certificate that the Copyright Office was even aware that the attached "work" was reconstructed, and not a true copy of the original work.[4] Seiler has not presented his application for a certificate, or any other evidence indicating that he advised the Copyright Office of the nature of the work he was submitting. The Copyright Act does not contemplate the copyrighting of a now non-existent original on the basis of a tendered reconstruction. Section 408 specifies the types of material that must be deposited along with an application for a certificate. The permissible materials include bona fide copies of the original work only; there is no mention of "reconstructions." If it were otherwise, the possibilities for fraud would be limitless.[5]

The certificate of copyright registration is not evidence of any material fact in Seiler's case. Section 410(c) does not compel its submission.

AFFIRMED.

---

**4.** There is one space on the certificate in which Seiler might have indicated that his submission was only a reconstruction of earlier work that he wished to copyright. This section of the form is headed "Compilation or Derivative Work," and asks the artist to "[i]dentify any preexisting work this work is based on or incorporates." This part has been left blank.

**5.** Even if section 410(c) were applicable here, it only makes the certificate prima facie evidence of the facts stated in the certificate. The trial court determined in a pre-trial hearing that Seiler had lost or destroyed the originals in bad faith. That finding overcame any presumption of veracity of the attached work that might have come from the copyright certificate.