Arthur **TAKEALL**

v.

**PEPSICO, INC.**

**Civ. No. S 92–766.**

United States District Court,
D. Maryland.

Dec. 23, 1992.

---

**20**

John S. Lopatto, III, Paulson, Nace, Norwind & Sellinger, Washington, D.C., for plaintiff.

Charles D. Ossola, Sharon G. Hyman and Stephen P. Demm, Hunton & Williams, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge:

This is a case arising from a high-profile advertising campaign for Diet Pepsi, sprung on the American populace during the 1991 Superbowl after its curiosity had been worked up into an anticipatory frenzy by pre-Superbowl "teaser" advertisements. During the Superbowl, and at what must have been phenomenal per-spot fees, Pepsi-Co had the legendary Ray Charles premiere its new Diet Pepsi jingle, by playing and singing, among other lines, "You got the right one, Baby, uh-huh!" Authorship of this pedestrian, but catchy, slogan is claimed by the plaintiff, Arthur Takeall, a relatively obscure (compared to both Pepsi and Ray Charles) Maryland ventriloquist. PepsiCo claims that, even if Mr. Takeall came up with the language in question before it did, PepsiCo did not violate Mr. Takeall's rights by using it in advertising Diet Pepsi. The case is before the Court on the defendant's summary judgment motion, which the plaintiff has opposed.

Of course, the standards for summary judgment are well-settled. Under Rule 56(c), the opponent of the motion must produce evidence on which a reasonable factfinder, under the appropriate proof burden, could base a verdict for the opponent. If the opponent cannot produce such evidence, the motion must be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The defendant makes a number of arguments in support of its motion, which was supported by a voluminous memorandum and a mountain of exhibits. The plaintiff has submitted an equally impressive opposition to the defendant's motion. In light of these massive written submissions, no oral hearing is necessary. Local Rule 105.6, D.Md.

█ First, the Court will address an inconsequential argument raised by the defendant. The defendant contends that plaintiff's reconstruction of his claimed early works incorporating the contested lan-

guage is inadmissible under the best evidence rule, Fed.R.Evid. 1001 *et seq.*, citing *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir.1986), *cert. denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). The problem with applying that case here is that the trial court in *Lucasfilm* found that the plaintiff had destroyed the originals in bad faith. 808 F.2d at 1318. Here, there simply is no such claim, nor is there any factual support for one. Although the defendant is skeptical about plaintiff's claim that the originals were lost in an airline baggage snafu, there is no evidence that they were destroyed in bad faith. Thus, there is no insuperable bar to admission of secondary evidence of the works.

The next issue to be discussed is whether the phrase at issue is copyrightable at all. There is sound authority for the proposition that simple and/or commonplace expressions lack sufficient originality to be copyrightable, *see, e.g., Narell v. Freeman,* 872 F.2d 907 (9th Cir.1989), but this determination is one of degree. In the instant case, the Court is not prepared to hold, on summary judgment, that the phrase at issue so lacks originality as to be unworthy of copyright protection. The expression is not commonly heard, to this Court's knowledge, among either cultured or uncultured speakers of the American Dialect of the English language, and the creators of Pepsi's jingle, as reflected in PepsiCo's motion papers filed in this case, claim to have derived it as an act of artistic creativity, if not inspiration. Thus, for the purposes of the present discussion, the Court will assume that the Takeall phrase is copyrightable.

Protectability under the copyright laws having been assumed, the next question is whether there is a triable dispute of fact on the issue of access by the defendant to the Takeall work. Under *Celotex* and *Anderson,* both *supra,* given the exhibits supporting defendant's claims of non-access, Mr. Takeall bears the burden of coming forth with enough evidence of access to warrant a reasonable fact-finder in deciding the issue in his favor, by a preponderance of the evidence, keeping in mind that inferences are to be taken in his favor.

■ It is well-settled that the plaintiff in a case such as this must show, by a preponderance, that the alleged copier had access to his works. *Atari, Inc. v. Amusement World, Inc.*, 547 F.Supp. 222, 227 (D.Md. 1981). What must be shown is more than a bare possibility of access (which would amount to no more than conjecture), but a "reasonable possibility of access." *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 944 (8th Cir.1992); *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir.1988). In this case, especially given the huge scope of Pepsi's operations, the question is whether the composers of the Pepsi jingle had the reasonable possibility of access. The composers of the Pepsi jingle have both testified on deposition that they never heard of Takeall, his dummy, his act, or his jingle (nor did they see his proposal to Pepsi, Pizza Hut, and/or KFC) before creating the Pepsi jingle. Of course, the fact that the composers have denied access does not alone entitle PepsiCo to summary judgment, if Takeall can come up with evidence that amounts to more than a conjecture or speculation to the contrary. *See, e.g., Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978).

■ The evidence that Takeall puts forward is of two sorts. First, he has submitted documentation that his act, including the jingle in question, was performed at various places since 1964. These performances, however, were mostly in connection with his crusade against drugs, and took place primarily in a limited market and before limited audiences, such as schools and Job Corps centers, to which there is absolutely no evidence that the alleged Pepsi creators had any access at all. The Court concludes, as a matter of law, that the plaintiff's works were not so widely disseminated as to support a reasonable fact-finder's conclusion, by a preponderance of the evidence, that defendant's creative people had access thereby. *See, e.g., Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir.1984).

■ Another question is whether striking similarity of the works as performed

can support a finding of access, as plaintiff contends. The plaintiff has submitted performance tapes and expert testimony from which a reasonable fact-finder could conceivably find striking similarity, taking the inferences most favorably toward the plaintiff, as the Court must do on summary judgment. In *Selle, supra,* however, the Court demonstrated convincingly that such evidence alone is not enough; rather, there must be some other circumstantial evidence establishing a reasonable possibility of access. 741 F.2d at 901. *See also Gaste, supra,* 863 F.2d at 1067–68.

■ The plaintiff claims that the evidence he needs to demonstrate a reasonable possibility of access comes from his submission of several proposals (to gain corporate sponsorship of his "Say No to Drugs" tour) to several Pepsi-affiliated companies and activities from late 1988 to mid–1989. Although defendant does not claim that the alleged copiers of the slogan worked directly for Pepsi, there is some support for a theory of third-party access, where the work is submitted to some person or agency associated with the alleged copier. The Courts have, however, viewed such third-party claims with some skepticism. *See, e.g., Hofmann v. Pressman Toy Corp.,* 790 F.Supp. 498, 506–08 (D.N.J. 1990).

Specifically, plaintiff claims to have submitted one of these proposals to a KFC franchisee, one Brady Keys, in Albany, Georgia. (KFC is a Pepsi-affiliated company.) Takeall claims that one press release, among many items in the proposal package, referred to the phrase in question. Mr. Keys has testified on deposition that he has no recollection of the proposal—or of Mr. Takeall, for that matter—and that he did not forward it to Pepsi or otherwise notify Pepsi of its contents, if in fact he received it at all.

Of course, the plaintiff is entitled, at this stage, to have *his* evidence of delivery of the proposals credited, which the Court will do, but, beyond that, he is entitled to no presumption or assumption as to what happened to the materials after submission; that is something on which he must offer sufficient evidence under *Anderson* and *Celotex* to survive this motion, as will be discussed more fully below.

The second Pepsi-related submission was to a Mr. Barry Johnson, affirmative action director of Pepsi's Pizza Hut subsidiary. None of those materials had any direct reference to the phrase at issue. The alleged recipient, Mr. Johnson, has no recollection of it, and he has testified that, had he received such a submission, it would not have been forwarded on to Pepsi headquarters (or to its advertising agency, for that matter).

The third submission was to Pepsi's regional offices in Baltimore, in response to an advertisement in a minority business journal seeking suppliers of goods and services to Pepsi. The Pepsi personnel who would have received the submission have no recollection of it, and their testimony is that it would not have been forwarded on beyond Baltimore. (The Court is concerned that the plaintiff's claims as to this particular submission might not be so worthy of belief as would ordinarily be the case under Rule 56, in light of a claim that the paper on which he said he copied the mailing was not even made until the next year, and that his own telephone records show that he himself placed his name on Pepsi's mailing list by calling an 800 number in 1991, although he testified that he never did so. For reasons that appear *post,* though, the Court need not become embroiled in this mini-dispute, nor need it at all discredit plaintiff's version of *his* activities in connection with the Baltimore submission in order to resolve this motion.)

The Court is of the opinion that the plaintiff has produced no evidence from which a reasonable fact-finder could find, by a preponderance of the evidence, that the creators of the Pepsi jingle had direct or indirect access to Takeall's phrase from the three submissions discussed above, even taking into account "striking similarity." A conclusion of access could not reasonably be based on inference or deduction from the evidence involving these submissions, as there is simply no *evidence* establishing access on the part of the alleged copiers;

such a conclusion could be based only on speculation and conjecture, grounded on a total disbelief of all the deposition testimony from those with personal knowledge of the facts of what happened to Mr. Takeall's alleged submissions. All of these people have denied forwarding the material on beyond the local level, and a fact-finder would necessarily have to disbelieve their testimony in order to find access, as Mr. Takeall has produced no independent evidence that the proposals were ever forwarded.

It is well-settled that, on summary judgment, absent specific facts discrediting testimony from a witness associated with the defendant, and absent a direct *conflict* in the testimony, the plaintiff (although entitled to have his *own* evidence taken as true) is not entitled to have the defendant's evidence positively disbelieved. *See* discussion and cases collected in 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil 2d* § 2726 at 119 nn. 11 & 12 (1983). Thus, plaintiff's case must fail, because the crucial evidence of access needed to build his case beyond speculation and conjecture to a level of circumstance that would warrant a reasonable fact-finder in concluding that defendant stole his work is simply missing. The fact that the persons involved were affiliated with Pepsi (only one was a Pepsi employee, the others being independent franchise owners or employees) is not enough of a showing of "specific fact" to warrant disbelief. *Id.; see also Walpert v. Bart*, 280 F.Supp. 1006, 1013 (D.Md.1967) (affidavits of defendant's directors not to be discredited as such), *aff'd per curiam*, 390 F.2d 877 (4th Cir. 1968).

The testimony of plaintiff's expert, Dr. Secunda, on the question of access, when carefully examined (*see, e.g.*, pltf.'s summary judgment ex. 41 at 166–73), shows that his conclusion that the jingle could have "percolated up" through Pepsi rests not on any expert analysis of data, any specific fact, or any particular experience, but simply on his own conjecture. Thus, it is not competent to ward off summary judgment. *See M & M Medical Supplies and Service, Incorporated v. Pleasant Valley Hospital, Incorporated*, 981 F.2d 160, 164–165 (4th Cir.1992). Even so, his deposition makes it clear that it is trade practice *not* to incorporate such customer-originated suggestions in advertising campaigns, *id.* at 63–64, thus undermining whatever little probative value his conjecture on the point might otherwise have had.

Certainly there is, in the foregoing analysis, a question of some judgment. The line between speculation and conjecture, on the one hand, and circumstantial evidence sufficient to support a verdict on the other, can be exceedingly fine, but, taking into account all the circumstances in this case, there is no more than a suspicion that defendant copied plaintiff's works, which is insufficient to warrant trial. *See Ferguson v. National Broadcasting Co., supra.*

(There is unrebutted evidence that the Pepsi jingle was independently created before Takeall made his submissions to the Pepsi-related enterprises, *see Novak v. National Broadcasting Co.*, 752 F.Supp. 164, 170–71 (S.D.N.Y.1990), *reh. denied*, 760 F.Supp. 47 (S.D.N.Y.1991), but, given financial bias attributed by plaintiff in his opposition memorandum to those receiving royalties from Pepsi's campaign, there is enough of a showing of "specific facts" to warrant disbelief of that evidence on summary judgment.)

Next, PepsiCo argues that Takeall's state-law claims for breach of contract and unjust enrichment are pre-empted by the Copyright Act. Even if they were not, his failure to be able (as discussed above) to bring forth evidence of any express or implied contract in fact, or quasi-contract implied in law, with Pepsi would bar his recovery on those claims under familiar summary judgment principles discussed *ante*.

Finally, because no reasonable fact-finder could possibly find any likelihood of confusion between Pepsi's product and his ventriloquist act (even assuming trademark protection is properly pled for the latter), summary judgment is also warranted on the plaintiff's claims for "reverse confusion and passing off," as well as for unfair

competition. *See, e.g., Bridges in Organizations, Inc. v. Bureau of National Affairs, Inc.*, 19 U.S.P.Q.2d 1827, 1831–32, 1991 WL 220807 (D.Md.1991).

For the reasons stated, an order will be entered separately, granting the defendant's motion for summary judgment.