35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Agustin RIVERA-CARRIZOSA, Defendant-Appellant.
 No. 93-10642.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1994.
Decided Sept. 14, 1994.
 
 Before: FLETCHER, HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 After a jury trial, Agustin Rivera-Carrizosa was convicted of violating 8 U.S.C. Sec. 1326, unlawful reentry or presence in the United States after deportation. Rivera contends that his conviction should be reversed because the government produced insufficient evidence of alienage. We reverse.
 
 
 3
 * On August 3, 1984, Rivera was convicted of possession of marijuana for sale, an aggravated felony. On April 22, 1992, Rivera was deported. He subsequently reentered the United States and was taken into state and then into federal custody. On March 24, 1993, Rivera was charged with violating 8 U.S.C. Sec. 1326, unlawful reentry or presence in the United States after deportation. Rivera pled not guilty, and proceeded to trial on July 20, 1993.
 
 
 4
 At the close of the government's case, Rivera moved for a directed verdict. The motion was denied. The jury returned a verdict of guilty. Under 8 U.S.C. Sec. 1326(b)(2), an alien who illegally reenters or is found in the United States after having been deported subsequent to a conviction for commission of an aggravated felony is subject to a prison sentence of up to 15 years. Rivera was sentenced under the Sentencing Guidelines to 84 months in prison.
 
 II
 
 5
 Rivera contends that his conviction must be reversed because there was insufficient evidence establishing that he was an alien. At trial, Rivera moved for a directed verdict "on the basis that there isn't sufficient evidence to satisfy all of the particular elements in this offense, especially directing the Court's attention to the deportation." RT 7/21/93 at 54. The balance of counsel's argument on the motion concerned the deportation element, not the alienage element. Id. at 54-65. The government, however, appears to be content to regard Rivera's statement below that the government had failed to prove "all" of the elements of the offense as a contention that the government failed to prove "each" of the elements of the offense.
 
 
 6
 There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The test applied by the appellate court is the same as the test applied by the district court. United States v. Lucas, 963 F.2d 243, 247 (9th Cir.1992).
 
 
 7
 The government relies on two pieces of evidence to establish Rivera's alienage. The government points out that extensive evidence concerning Rivera's deportation was introduced, and then argues that "[i]t is common knowledge that only aliens are deported." Br. of Govt. at 15. This is clearly inappropriate. We held in United States v. Meza-Soria, 935 F.2d 166 (9th Cir.1991), that "it would be quite improper to establish the alienage element of the reentry offense through the use of factual findings in the deportation hearing," and explained that "the difference in standards of proof must preclude the use of civil proceeding findings to establish facts in a criminal case." Id. at 169.
 
 
 8
 The issue as initially framed in Meza-Soria was whether a finding of alienage in a deportation proceeding collaterally estopped the defendant from contesting alienage in the criminal trial. Id. at 168. The Meza-Soria court did not, however, limit itself to the holding that the defendant must be allowed to introduce evidence contesting alienage, but rather held additionally that the government's attempt to introduce findings from the administrative proceeding was improper. Id. at 169. Accordingly, the government may not rely on the fact that Rivera was deported in order to establish Rivera's alienage.
 
 
 9
 The second piece of evidence the government relies upon is the INS agent's testimony that Rivera was an alien. That testimony, in its entirety, was as follows:
 
 
 10
 Q. [By prosecutor] Agent Smith, if I could summarize a few things with you: Is Mr. Rivera-Carrizosa an alien?
 
 
 11
 A. Yes, sir, he is.
 
 
 12
 Q. And how do you know that?
 
 
 13
 A. His immigration file contains a copy of his birth certificate and other documentation that was issued to him previously by the Immigration Service.
 
 
 14
 RT 7/21/93 at 43. The reference to "documentation ... issued to him previously by the Immigration Service" may not be considered for the same reason that findings in deportation proceedings are inadmissible: the documentation was the product of administrative proceedings in which the government was held to a lower standard of proof.
 
 
 15
 This leaves the reference to Rivera's birth certificate. It is undisputed that the birth certificate was never introduced into evidence. This poses an obvious problem for the government. The agent's testimony violated the "best evidence" rule, Fed.R.Evid. 1002, which states that "[t]o prove the content of a writing ... the original writing ... is required, except as otherwise provided in these rules or by Act of Congress." The agent's testimony regarding the birth certificate was clearly introduced to prove the content of the writing: there is no indication that the agent had any knowledge of Rivera's birthplace apart from the knowledge he obtained from reading the birth certificate itself. We have nothing but his word that it is even Rivera's birth certificate.
 
 
 16
 In applying Fed.R.Evid. 1002, we have explained that
 
 
 17
 [w]hen the contents of a writing are at issue, oral testimony as to the terms of the writing is subject to a greater risk of error than oral testimony as to events or other situations. The human memory is not often capable of reciting the precise terms of a writing, and when the terms are in dispute only the writing itself, or a true copy, provides reliable evidence.
 
 
 18
 Seiler v. Lucasfilm, Ltd., 808 F.2d 1316, 1319 (9th Cir.1986), cert. denied, 484 U.S. 826 (1987). Here, neither the writing nor a copy was provided. The agent's testimony, unsupported by such documentation, was inadmissible.[1]
 
 
 19
 Rivera did not object to the agent's statement about the birth certificate, perhaps because he expected that the birth certificate would eventually be put into evidence. If we were reviewing this case for trial error, we would review the admission of the evidence for plain error affecting substantial rights. United States v. Olano, 113 S.Ct. 1770, 1776-78 (1993); United States v. Dischner, 974 F.2d 1502, 1515 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993). Our inquiry here, however, is not only whether an evidentiary error was made but also whether the evidence is sufficient. Rivera seeks not a new trial but dismissal. A new trial is the remedy for trial error; by contrast, the remedy for insufficiency of evidence, consistent with principles of double jeopardy, is dismissal. Burks v. United States, 437 U.S. 1, 16 (1978); see also United States v. Luna, 21 F.3d 874, 883 (9th Cir.1994).
 
 
 20
 In making a determination as to the sufficiency of the evidence where evidence has been improperly admitted, we must consider not only the evidence which was properly admitted, but also the evidence which was admitted improperly. Lockhart v. Nelson, 488 U.S. 33, 34 (1988) ("where the evidence offered by the [prosecution] and admitted by the trial court--whether erroneously or not--would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial") (emphasis added); United States v. Chu Kong Yin, 935 F.2d 990, 1001 (9th Cir.1991).
 
 
 21
 Even taking into account Agent Smith's erroneously admitted testimony, we conclude that the government's evidence was insufficient to support a finding of alienage. The elements of alienage are a foreign birth and an absence of naturalization. Here, the government did not even prove foreign birth. Agent Smith did not state when or where or even that he saw Rivera's birth certificate or even a copy of it; he did not state where Rivera was born; indeed, he did not even state that Rivera was born outside of the United States. All that Agent Smith did was to state in respect to the question of how he knew Rivera was an alien that "His immigration file contains a copy of his birth certificate." RT 7/21/93 at 43. This evidence is vague, conjectural, and incomplete. The government entirely failed to prove beyond a reasonable doubt that Rivera was foreign-born, a necessary component of proving alienage. Cf. United States v. Arriaga-Segura, 743 F.2d 1434, 1435 (9th Cir.1984) (government proved alienage by submitting evidence that defendant admitted to border patrol agents that he was a Mexican citizen); Farrell v. United States, 381 F.2d 368, 369 (9th Cir.) (government proved alienage by submitting evidence that defendant had earlier pled guilty to a charge one of whose elements was alienage, that defendant had admitted that he was an alien, and, through his birth certificate, that defendant was foreign-born), cert. denied, 389 U.S. 963 (1967). We therefore revers the conviction and instruct the district court to dismiss the indictment.[2]
 
 
 22
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The statement that the birth certificate established Rivera's alienage also violated the hearsay rule: it was a statement made by an out-of-court declarant (the birth certificate itself, or, alternatively, the author of the certificate) and introduced for the truth of the matter asserted. Fed.R.Evid. 801(a), (c). The statement did not fall under the public records exception to the hearsay rule, Fed.R.Evid. 803(8). That rule applies to records themselves, not to statements about records. The record itself was never introduced
 
 
 [2]
 Because we reverse, we do not reach the other purported trial errors which are the subject of Rivera's appeal