**Livia I. GUILLERMETY, Glenn D. Edgmon and Fiore Botta, Plaintiffs,**

v.

**SECRETARY OF EDUCATION OF THE UNITED STATES and Secretary of Treasury of the United States, Defendants.**

**No. 01–cv–74904.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 27, 2003.

See also 241 F.Supp.2d 727.

Deanne B. Loonin, Boston, MA, for plaintiff.

Jacqueline M. Hotz, Detroit, MI, for defendant.

## ORDER

BORMAN, District Judge.

(1) **DISMISSING WITHOUT PREJUDICE THE UNITED STATES' COUNTERCLAIM AGAINST PLAINTIFF EDGMON; (2) GRANTING THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO ITS COUNTERCLAIM AGAINST PLAINTIFF GUILLERMETY; AND (3) DENYING PLAINTIFF GUILLERMETY'S CROSS–MOTION FOR SUMMARY JUDGMENT AS TO THE COUNTERCLAIM**

Now before the Court are the parties' cross-motions for summary judgment with respect to the United States' counterclaim against the remaining Plaintiffs—Guillermety and Edgmon. The United States' counterclaim seeks to reduce the Plaintiffs' defaulted student loan obligations to a final judgment. Having reviewed and considered the parties' briefs, and the entire file of this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. Having considered the entire record, and for the reasons that follow, the Court hereby (1) DISMISSES WITHOUT PREJUDICE the United States' counterclaim against Plaintiff Edgmon; (2) GRANTS the United States' motion for summary judgment with respect to its counterclaim against Plaintiff Guillermety; and (3) DENIES Plaintiff Guillermety's cross-motion for summary judgment as to the counterclaim.

## FACTS

The facts relevant to this motion were adequately documented in the Court's prior order granting in part and denying in part Plaintiffs' motion for summary judgment and will not be repeated here. *See Guillermety v. Secretary of Education*, 241 F.Supp.2d 727, 2002 WL 31962792 (E.D.Mich. Sept.27, 2002).

## ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548; *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed.1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548 (1986). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd Cty. Bd. of Ed.,* 106 F.3d 135, 145 (6th Cir.1997); *see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (holding that the non-moving party must produce more than a mere scintilla of evidence to survive summary judgment).

## B. Plaintiff Edgmon

■ 20 U.S.C. § 1087dd provides that "Any agreement between an institution and a student for a [Federal Perkins] loan from a student loan fund assisted under this part ... shall provide that the liability to repay the loan shall be cancelled upon the death of the borrower, or if he becomes permanently and totally disabled as determined in accordance with regulations of the Secretary." 20 U.S.C. § 1087dd(c)(1)(F). On November 12, 2002, Plaintiff Edgmon, upon the Government's request, submitted a second request for an administrative discharge based upon total and permanent disability. (Gov't's Resp. Br. at 2.) Both parties acknowledge that Edgmon was approved for a "conditional discharge" based upon the Secretary's initial determination that Edgmon, according to 34 C.F.R. 674.51,[1] was totally and permanently disabled.[2] (*Id.*)

34 C.F.R. § 674.61 provides, in relevant part:

(b) Total and permanent disability.

(1) If the Secretary has made an initial determination that the borrower is

---

**1.** Total and Permanent Disability is defined as: "The condition of an individual who is unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death." 34 C.F.R. § 674.51(s).

**2.** All administrative offsets were refunded to Edgmon. (Gov't's Resp. Br. at 2.)

totally and permanently disabled, as defined in § 674.51(s), the loan is *conditionally discharged for up to three years* from the date that the borrower became totally and permanently disabled, as certified by a physician. The Secretary *suspends collection activity* on the loan from the date of the initial determination of total and permanent disability until the end of the three-year conditional period. If the borrower satisfies the criteria for a total and permanent disability discharge during and at the end of the conditional discharge period, the balance of the loan is discharged at the end of the conditional discharge period and any payments received after the date the borrower became totally and permanently disabled as certified under § 674.61(b)(3) are returned to the sender.

34 C.F.R. § 674.61(b)(1) (emphasis added).

Plaintiff Edgmon argues that the Government's counterclaim must be dismissed because the Secretary's regulations provide that "collection activity" on the loan shall be suspended after a borrower obtains a conditional discharge. The Government disagrees, arguing that (1) certain unspecified guidance "makes it clear" that if collection procedures are ongoing when the borrower applies for total and permanent discharge, the Government need not halt litigation; (2) discharge of a student loan is exclusively an administrative remedy—there is no private cause of action for relief; and (3) the entry of judgment against the Plaintiff Edgmon will not interfere with or delay the administrative discharge of Edgmon's loans.

■ The Court disagrees with the Government. First, it is true, as discussed in the cases cited by the Government, that a disability discharge of a Federal Perkins Loan must be obtained from the Secretary of Education through the administrative procedures outlined in the Code of Federal Regulations. See *United States v. Wright,* 87 F.Supp.2d 464, 466 (D.Md.2000); *In re Scholl,* 259 B.R. 345, 349 (Bankr.N.D.Iowa 2001); *In re Bega,* 180 B.R. 642, 643–44 (Bankr.D.Kan.1995); *United States v. Bertucci,* No. 00–0078, 2000 WL 1234560, at *3 (E.D.La. Aug.29, 2000).[3] The Government's reliance on these cases, however, is misplaced. In this case, Plaintiff Edgmon did utilize the administrative procedures contained in the Code of Federal Regulations. In fact, Edgmon obtained a conditional discharge. Edgmon merely seeks to enforce the Secretary's own regulation, requiring that collection activity be suspended once this initial determination has been made. Thus, the aforementioned cases are distinguishable from the facts currently before the Court.

The Government's reliance on *Green v. United States,* 163 F.Supp.2d 593, 598–99 (W.D.N.C.2000), is therefore, also misplaced. There, the court recognized that the administrative discharge of a student loan must be pursued through the administrative process. *Id.* at 598. As such, the court dismissed the plaintiff's claims so that he could pursue his administrative remedies. *Id.* The Court, however, permitted the government's motion for summary judgment to proceed, noting that the discharge provisions made no distinction between loans that are in the process of being collected and those that are reduced to judgment. *Id.* at 598–99. Thus, be-

---

**3.** The Government also cites *Armstrong v. Accrediting Council for Continuing Education & Training, Inc.,* 980 F.Supp. 53, 66 (D.D.C. 1997). However, the portion of the opinion relied upon by the Government (Part VI) was expressly withdrawn by the court by subsequent order (October 31, 1997). Thus, the amended opinion no longer contains the passage relied upon by the Government.

cause the plaintiff could still obtain an administrative discharge of his loan, the court concluded that it was proper to consider the government's motion for summary judgment. *Id.* at 599.

Unlike *Green,* the issue in this case is not a party's need to exhaust administrative remedies in order to obtain an administrative discharge—Edgmon has already exhausted the administrative process and obtained a conditional discharge. The Secretary's regulations specifically require that all collection activity be suspended— activity which, as noted below, includes the continuation of litigation to collect an outstanding and delinquent student loan. Thus, contrary to *Green,* allowing the Government to go forward with its motion for summary judgment will permit action in direct contravention to the Secretary's own regulations. *Green,* therefore, is not on point.

Finally, the Government argues that certain unspecified guidance makes it clear that if collection procedures are ongoing when the borrower applies for total and permanent discharge, the Government need not halt litigation. Thus, the Government argues that while it cannot initiate litigation, it can pursue litigation that was already ongoing. No support, however, is cited for this proposition.

To the contrary, subpart C of the Secretary's regulations dealing with Federal Perkins Loans, discusses, in part, collection procedures. The regulations provide: "The term 'collection procedures,' as used in this subpart, includes that series of more intensive efforts, *including litigation*

as described in § 674.46, to recover amounts owed from defaulted borrowers who do not respond satisfactorily to the demands routinely made as part of the institution's billing procedures." 34 C.F.R. § 674.45(a) (emphasis added). The regulations require that the Secretary suspend collection activity upon the granting of a conditional discharge. No distinction is made in the regulations for the cessation of non-litigation versus litigation collection activity—all collection activity must cease, including litigation.[4] The Court is bound by these regulations. *See A.D. Transport Express, Inc. v. United States,* 290 F.3d 761, 766 (6th Cir.2002) (noting that "[w]hen an agency promulgates regulations it is, however, bound by those regulations. It may not attempt to subvert the rule-making process through interpretations that find no support in the regulation's language.") (citations omitted).

As such, no collection activity can occur with respect to Plaintiff Edgmon, including the continuation of litigation, after he received a conditional discharge. The Court, therefore, dismiss without prejudice, the United States' counterclaim against Plaintiff Edgmon.

## C. Plaintiff Guillermety

The Government also seeks to reduce Guillermety's defaulted student loan obligations to a final judgment. Guillermety does not contest the fact that she obtained the student loans, and apparently does not contest the fact that she is in default on these loans. As noted *infra,* Guillermety argues that summary judg-

4. Black's Law Dictionary defines "collect" to mean: "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or *legal proceedings.*" BLACK's LAW DICTIONARY 263 (6th ed.1990) (emphasis added). The Secretary's commentary is also instructive. Several commentators worried that the complexity of the new regulations

would cause unnecessary anxiety and confusion on the part of disabled borrowers. The Secretary disagreed, noting that "borrowers suffer no negative consequences during the conditional discharge period. No collection activity or adverse credit reporting occurs during the conditional discharge period." 65 Fed.. Reg. 65678, 65681 (2000).

ment must be granted in her favor because the Government has not set forth any admissible evidence which would indicate that the promissory notes were assigned to the Government. The Court disagrees, and GRANTS summary judgment in the United States' favor with respect to its counterclaim against Plaintiff Guillermety.

### 1. Collection on a Promissory Note

■ The Government can establish a prima facie case that it is entitled to collect on a promissory note if it introduces the promissory note and a certificate of indebtedness signed under penalty of perjury by a loan analyst. *See United States v. Davis,* 28 Fed.Appx. 502, 503, 2002 WL 169603 (6th Cir. Jan.31, 2002) (discussing *United States v. Irby,* 517 F.2d 1042, 1043 (5th Cir.1975)); *see also United States v. Manning,* No. 00–240, 2002 WL 193699, at *2 (S.D.Ohio Jan. 30, 2002) (discussing *Irby* ); *United States v. Freeman,* No. 01–1859, 2002 WL 467688, at *1 (N.D.Cal. Mar.25, 2002) (discussing *Irby* ). The Government has done so in this case. Signed promissory notes have been provided for all five of Guillermety's Federal Perkins and Stafford Loans. (Defendants' Certification of True Copy, Exh.'s 1, 4, 7, 8, 10.) Certificates of indebtedness were also signed under penalty of perjury pursuant to 28 U.S.C. § 1746(2), indicating that Guillermety defaulted on the loans and that the loans were ultimately assigned to the Department of Education. (Def.'s MSJ Resp. Br.)

Having met this burden, Plaintiff Guillermety has the "burden of proving the nonexistence, extinguishment, or variance in payment of the obligation." *Davis, surpa* (citing *Irby* ). Guillermety makes no such argument. Instead, Plaintiff argues for the first time in this case that United States may not, in fact, be a holder of her promissory note—i.e., the Government has no admissible evidence establishing the as-

signment of the loans to the Government. The Court rejects this argument.

■ As an initial matter, Plaintiff argues that Department of Education regulations "require" that assignment of a loan to the Secretary of Education be accompanied by either (1) written assignment of the loan, or (2) assignment affixed to the promissory note itself, citing 34 C.F.R. § 682.409(c)(4) (applicable to Plaintiff's Stafford Loans) and 34 C.F.R. § 674.50(c) (applicable to Plaintiff's Perkins Loans). The regulations do not *require* such documentation. 34 C.F.R. § 682.409 does provide that for each loan assigned, the agency shall submit to the Secretary certain documents associated with the loan, including "a written assignment of the loan or judgment, unless this assignment is affixed to the promissory note." 34 C.F.R. § 682.409(c)(4)(iii). The same provision states, however, that the "Secretary may accept the assignment of a loan without all of the documents listed in paragraph (c)(4) of this section." 34 C.F.R. § 682.409(c)(6). Similarly, 34 C.F.R. § 674.50(c), applicable to Perkins loans, provides a list of documentation that the Secretary *"may"* require for purposes of assignment.

■ Plaintiff also relies on the "Best Evidence Rule"—Federal Rule of Evidence 1002. This evidentiary rule provides: "To *prove the content of a writing,* recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." FED.R.EVID. 1002 (emphasis added). Plaintiff contends that in this case, application of the Best Evidence Rule requires that the assignment itself, not secondary references to the assignment, must be produced to prove the content of the assignment. Having concluded, however, that applicable regulations do not require either written assignment of a loan or an

endorsement affixed to the promissory note, the Best Evidence Rule is inapplicable in this case.[5] Simply stated, the Government is not attempting to prove the content of a writing through secondary evidence.[6]

■ Finally, Plaintiff argues that the Department of Education's computer printout screens cannot be utilized to establish assignment—Plaintiff contends that the documents are inadmissible hearsay and that the Business Records Exception, FRE 803(6), has not been satisfied in this case. The Court once again disagrees.

Federal Rule of Evidence 803(6) provides, in relevant part:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

FED. R. EVID. 803(6).

Computer printouts generated by the Department of Education establish that the loans were assigned to the United States on the dates established above—the date of entry ("DATE ENT") corresponds to the assignment dates set forth by the Government. (Defendants' Certification of True Copy, Exh.'s 25, 31, 32.) Furthermore, the Government has set forth an appropriate foundation for the admission of the documents under Rule 803(6).

A computer printout may be admissible under Rule 803(6) as a business record if a proper foundation is established. *United States v. Salgado*, 250 F.3d 438, 452 (6th Cir.2001). According to the Sixth Circuit:

The business records exception is available if the evidence to be introduced was (1) "made in the course of a regularly conducted business activity;" (2) "kept in the regular course of [ ] business;" (3) a result of a "regular practice of the business" to create the documents; and (4) "made by a person with knowledge of the transaction or from information transmitted by a person with knowledge."

*United States v. Laster*, 258 F.3d 525, 529 (6th Cir.2001) (citation omitted); *see also United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir.1998). Furthermore:

---

**5.** As noted in an unpublished Sixth Circuit opinion, the best evidence rule is something of a misnomer. "The rule is perhaps more accurately dubbed the original document rule, for instead of requiring the 'best' evidence in every case, the rule actually requires the production of an original document rather than a copy." *DeMarco v. Ohio Decorative Products, Inc.*, No. 92–2294, 1994 WL 59009, at *9 (6th Cir. Feb.25, 1994) (citing *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318 (9th Cir.1986)). As noted by the court in *Seiler:* "Dating back to 1700, the rule requires not, as its common name implies, the best evidence in every case but rather the production of an original document instead of a copy. Many commentators refer to the rule not as the best evidence rule but as the original document rule." *Seiler*, 808 F.2d at 1318.

**6.** The cases cited by Plaintiff are distinguishable. For example, the Best Evidence Rule was applicable in *Americhem Corp. v. St. Paul Fire and Marine Ins.*, 942 F.Supp. 1143 (W.D.Mich.1995) because the parties were attempting to prove the terms of an insurance policy.

Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record." *Weinstock,* 153 F.3d at 276. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. *Id.* (citing *In re Custodian of Records of Variety Distrib., Inc.,* 927 F.2d 244, 248 (6th Cir.1991)).

*Salgado,* 250 F.3d at 451–52; *see also United States v. Hathaway,* 798 F.2d 902, 906 (6th Cir.1986) (noting that "all that is required is that the witness be familiar with the record keeping system").

▆▆▆ The "Certification of True Copy," which contains the computer printouts found at exhibits 31 and 32, contains an affidavit that states that the printouts are maintained in the regular course of business. Furthermore, affidavits submitted by Robert Jahnke and John Hilton (Def.'s Amended Preliminary Injunction Resp. Br) with respect to similar computer printouts from Department of Education's system indicate that the Government can lay a proper foundation with respect to the computer printouts. Both affidavits state that the individuals are familiar with how the Department of Education "receives information and creates and maintains records related to [the] loans" (Jahnke Affidavit ¶ 4; Hilton Affidavit ¶ 4.) The affidavits also reveal that the records maintained in the Department of Education's Debt Management and Collection System are created by staff in the regular course of their duties at the time of the transaction or event recorded. (Jahnke Affidavit ¶ 5; Hilton Affidavit ¶ 5.) Finally, the affidavits indicate that the records are made at or near the time of the transaction recorded, by or from information transmitted by a person with knowledge of the transaction pursuant to the Department's regular practice of making and keeping such records. *(Id.)*

**2. Reinstatement of Eligibility**

Plaintiff also argues that summary judgment in favor of the Government is improper because a judgment for the entire balance of the loan ignores a supposed defense which requires that a party's monthly payment be adjusted to an amount that is "reasonable and affordable based upon the borrower's total financial circumstances." Plaintiff is mistaken.

20 U.S.C. § 1078–6(b), relied upon by Plaintiff, applies only to Plaintiff's Federal Stafford Loans.[7] This section provides a mechanism for borrowers who have defaulted on Federal Family Education Loans to obtain new financial assistance upon the satisfaction of certain conditions.[8] Specifically, the section provides:

> Each guaranty agency shall establish a program which allows a borrower with a defaulted loan or loans to renew eligibility for all title IV student financial assistance (regardless of whether the defaulted loan has been sold to an eligible lender) *upon the borrower's payment of 6 consecutive monthly payments. The guaranty agency shall not demand from a borrower as a monthly payment amount under this subsection more*

---

7. A similar provision exists with respect to Federal Perkins loans—20 U.S.C. § 1087dd(h)(2). This provision, however, does not contain the reasonable and affordable language cited by Plaintiff.

8. As noted by the Government, borrowers in default are no longer eligible for new federal

student assistance. 20 U.S.C. § 1091(a)(3). However, the Federal Family Education Loan Program provides two options in which a borrower may obtain new assistance—"loan rehabilitation" pursuant to 20 U.S.C. § 1078–6(a) and renewal of eligibility pursuant to 20 U.S.C. § 1078–6(b).

*than is reasonable and affordable based upon the borrower's total financial circumstances.* A borrower may only obtain the benefit of this subsection with respect to renewed eligibility once.

20 U.S.C. § 1078–6(b) (emphasis added).

Thus, contrary the interpretation advocated by Plaintiff, this section does not prohibit the government from obtaining a judgment against a debtor in default unless they offer the borrower a chance to make reasonable and affordable monthly payments. Instead, this provision merely provides an avenue for a borrower in default to obtain new assistance—the borrower must make six consecutive monthly payments. In calculating the monthly payment necessary to renew one's eligibility, the statute merely prohibits the Secretary from seeking a monthly payment that is more than is "reasonable and affordable." Thus, this section is only applicable for purposes of renewing one's eligibility for certain student financial aid. As stated by the Government, this "statute creates no general limit for collection action on defaulted FFEL Program loans or for defaulted Perkins loans, whether that action is taken by the guarantor, the institution, or by Education." (Def.'s Resp. Br. at 14.) In fact, even if the debt is reduced to a judgment, a borrower may nonetheless be eligible for FFEL Program assistance if she "[m]akes arrangements satisfactory to the United States, to pay the debt." 34 C.F.R. 668.35(d)(2). If Plaintiff desires to renew her eligibility for student assistance, she must utilize the administrative process, not the courts. *Green, supra.* Consequently, summary judgment is hereby granted in favor of the United States with respect to its counterclaim against Plaintiff Guillermety.

## CONCLUSION

For the foregoing reasons, the Court

(1) DISMISSES WITHOUT PREJUDICE the United States' counterclaim against Plaintiff Edgmon;

(2) GRANTS the United States' motion for summary judgment with respect to its counterclaim against Plaintiff Guillermety; and

(3) DENIES Plaintiff Guillermety's cross-motion for summary judgment as to the counterclaim.

SO ORDERED.