DATA GENERAL CORPORATION
and Data General Service,
Inc., Plaintiffs,

v.

GRUMMAN SYSTEMS SUPPORT
CORPORATION, Defendant.

Civ. A. No. 88-0033-S.

United States District Court,
D. Massachusetts.

Oct. 9, 1992.

---

Robert S. Frank, Jr., Kevin P. Light, Choate, Hall & Stewart, Boston, Mass., Jacob Frank, Morris G. Nicholson, Data General Corp., Westboro, Mass., for plaintiffs.

David Jonathan Apfel, Paul F. Ware, Goodwin, Proctor & Hoar, Boston, Mass., Gary L. Benton, Andrew M. Gold, Ronald S. Katz, Coudert Bros., San Francisco, Cal., for defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS, DEFENDANT'S MOTION TO RECONSIDER, DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE, AND MISCELLANEOUS DISCOVERY MOTIONS

SKINNER, District Judge.

These motions represent the final pretrial salvos fired in the course of heated and prolonged litigation between Plaintiffs Data General Corporation and Data General Service, Inc. (collectively, Data General) and defendant Grumman Systems Support Corporation (Grumman) concerning Grumman's use of Data General's computer soft-ware product ADEX. After nearly four years of litigation, this case is approaching trial, currently scheduled to begin on October 19, 1992.

Though several motions are pending before this court, there is only one significant unresolved issue: the propriety of Grumman's motion to dismiss Data General's copyright infringement and misappropriation of trade secret claims for failure of proof. The remaining motions are derived from the motion to dismiss, or, alternatively, are mooted by my recent Motion and Order of September 10, 1992, or are best left for final determination during trial.

*Discussion*

*I  Motion To Dismiss And Related Motions*

A.  Leave for Late–Filed Motion

■ The threshold question is whether this court should consider the substance of Grumman's late-filed motion to dismiss. Following a pretrial conference on March 10, 1992, I issued a scheduling order directing the parties to serve all discovery requests and to file all dispositive motions no later than April 30, 1992. Grumman's motion to dismiss was filed on July 27, 1992, nearly three months after the deadline had passed. Grumman urges this court to grant leave in light of "recently disclosed information" that arose after the deadline had passed. Specifically, Grumman contends that Data General admitted for the first time on June 29, 1992, that it could not produce the original source code[1] for the ADEX software. Grumman argues that, without the source code, Data General cannot prove that the program copied and used by Grumman is the same program that is protected by Data General's copyright registrations. Data General filed only small portions of the ADEX source code (known as a symbolic filing) with the copyright office in accordance with applicable regulations.

---

1. A computer program may be written in one or more computer languages. Generally, a computer program is written by a programmer using "source code," a computer language that uses combinations of words, symbols, and num-bers. To enhance the speed of the program, source code is then compiled by a computer and essentially converted to "object code," a binary machine language appearing as a series of 1's and 0's.

The issue of leave from the scheduling order is essentially one of timeliness: Did Grumman act at the first reasonable opportunity upon learning of the alleged nonexistence of the ADEX source code? Leave to file is denied because I find that Grumman did not act diligently to advance the grounds for dismissal.

A review of Grumman's attempts to obtain the ADEX source code is necessary to put the issue in context. Grumman first requested a copy of the ADEX source code in June 1988. Data General objected to the request, in part, because it was overly burdensome to produce the various source code versions of ADEX, each version containing several million lines of computer code. Grumman did not contest the objection.

Two years later, in March 1990, the parties agreed to exchange object code versions of ADEX and other relevant software products. At this time, the parties did not seek source code versions, although they expressly retained the right to do so.

Another two years passed before Grumman sought the source code for a second time, nearly four years after its initial request. On April 14, 1992, Grumman demanded production of, among other things, the source code for all versions of released ADEX programs. Data General objected to the request on May 14, 1992, stating:

> Data General does not maintain complete copies (either hard or magnetic) of source code for the multiple revisions of its [ADEX] programs in any comprehensive, cohesive form in the normal course of its business. Rather, the various files, sub-files and other component parts of each program revision are stored or "dumped" on numerous storage tapes and assembled only at the time when a specific revision is compiled. In order for Data General to produce the multiple source code listings that Grumman has requested, it would be necessary for Data General personnel to spend months reviewing approximately four hundred 2,400 foot storage tapes (assuming that the older tapes are even readable) for the purpose of piecing the various compo-

nents of each program revision together. This data, if transferred to PC–DOS 3½ inch or 5¼ inch floppy disks as you have requested, would consume almost 33,000 such disks.

One month later, on June 15, 1992, Grumman filed a motion to compel production of the ADEX source code. Data General objected on June 29, 1992, raising essentially the same grounds as stated in the letter quoted above. One month later, Grumman filed this motion for leave to file a motion to dismiss based on "recently disclosed information."

▊ Contrary to Grumman's assertion that it learned for the first time on June 29, 1992, that Data General could not readily produce the original ADEX source code, the May 14 letter demonstrates that Grumman knew or should have known these facts at least six weeks earlier. The May 14 letter states that Data General does not archive older versions of ADEX source code in one single accessible location and that collecting the source code could take months, and raises the possibility that some older tapes may not be readable—the very facts upon which Grumman bases its claim that Data General cannot produce the original source code. I decline to grant leave because Grumman waited over ten weeks (May 14—July 27) to assert the grounds that allegedly defeat Data General's claims. Where a party seeks leave from a scheduling order based on "recently disclosed facts," it must act diligently to bring these grounds to the court's attention or else be content to abandon them.

B. Motion to Dismiss Copyright and Trademark Claims.

▊ Even though I have denied Grumman's motion on procedural grounds, I will address the merits, since the basic issue may arise at trial in the form of a motion for a directed verdict. The motion to dismiss would fail because it is not supported by the facts, nor is it consistent with established copyright doctrine. Grumman asserts that Data General cannot produce the original ADEX source code and that such failure precludes Data General from prov-

ing its claims for copyright infringement and trade secret misappropriation. Moreover, Grumman claims that Data General's failure to preserve the source code prejudiced Grumman's defense and warrants the entry of default judgement.

As a preliminary matter, this court finds that the factual premise underlying Grumman's motion—that Data General cannot produce the ADEX source code—is overly ambitious. As this court understands the facts, Data General has never stated that it absolutely cannot retrieve the original ADEX source code. Rather, Data General has vigorously asserted that compiling the source code in a useful and coherent format would be unduly burdensome. While Data General has suggested the possibility that the age of the storage tapes could prevent a compilation, this possibility is far from an admission that the source code no longer exists. At best, Grumman's assertion is premature. Only in the event that Data General were unable to produce the source code after being so ordered by this court would Grumman's motion be proper.

█ This court also finds no legal foundation for Grumman's motion. To maintain a copyright action, Data General "must prove each of two elements of copyright infringement: (1) ownership of the copyright; and (2) copying by the defendant." *Motta v. Weiser, Inc.*, 768 F.2d 481, 483 (1st Cir.1985) (citations omitted), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985). Grumman demands strict documentary proof to satisfy the copying element. Specifically, Grumman posits that without the original source code programs, Data General cannot establish by competent evidence a link between the object code programs copied by Grumman and the source code programs registered with the copyright office. This argument is faulty because it fails to distinguish between the registered work and the medium in which it is fixed. *See Atari, Inc. v. Amusement World, Inc.*, 547 F.Supp. 222, 226 (D.Md.1981).

In this case, Data General's registered copyright protects the intangible versions of "ADEX," regardless of the tangible medium in which ADEX was registered or expressed. The software program ADEX—not the source code version of ADEX—is the protected work. "[A] computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1249 (3rd Cir.1983) (citations omitted), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *see also GCA Corp. v. Chance*, 217 U.S.P.Q. 718, 720 (N.D.Cal. 1982) ("Because the object code is the encryption of the copyrighted source code, the two are to be treated as one work; therefore, copyright of the source code protects the object code as well."); *Midway Mfg. v. Artic Int'l., Inc.*, 211 U.S.P.Q. 1152, 1158 (N.D.Ill.1981) ("It is the work that cannot be copied or incorporated and not the specific tangible expression on file in the Copyright Office."). Regulations promulgated by the copyright office are consistent with the case law: "The Copyright Office considers source code and object code as two representations of the same computer program. For registration purposes, the claim is in the *computer program* rather than in any particular representation of the program." Copyright Office, Compendium II of Copyright Office Practices § 321.03 (1984) (emphasis in original).

Accordingly, as both the object and source code are representations of the same protected ADEX copyright, Data General can show infringement of the ADEX expression through either the source or object code representation. Obviously, Data General must prove that Grumman infringed the ADEX copyright. That is to say, Data General must prove that the object code programs admittedly copied and used by Grumman were representations of the copyrighted versions of ADEX. But Data General need not prove a line-for-line correspondence between the object code and the source code, particularly where the defendant so clearly infringed the copyright. Throughout their briefs filed with this court, Grumman has admit-

ted to copying ADEX object code programs. Moreover, numerous Grumman employees and former employees have admitted under oath that Grumman copied and used various versions of ADEX (and even maintained an ADEX library); indeed, hundreds of object code tapes labelled as ADEX programs were recovered from Grumman's possession. Data General agreed to produce ADEX object code for all versions of ADEX, and the parties have already exchanged object code for selected versions of ADEX. Data General is also prepared to offer evidence of the integrity of its protocol governing the encryption of its source code into its object code. In the face of this evidence, Data General need not produce the ADEX source code to prove its action for copyright infringement.

Grumman relies heavily on *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir.1986), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987), for the proposition that a copyright plaintiff must produce the original "writing" or demonstrate its unavailability for some reason other than the serious fault of the plaintiff. Applying this proposition to this case, Grumman contends that since Data General cannot produce the ADEX source code filed with the copyright office, Data General's case necessarily fails to prove infringement. I disagree.

In *Seiler*, the plaintiff obtained a copyright after the alleged infringement had already occurred by filing "reconstructions" of his original drawings. Plaintiff, however, could produce no evidence of his original drawings. The court found that the plaintiff purposely and in bad faith destroyed the originals, and misrepresented the nature of the reconstructions. *Id.* In the present case, there is no suggestion that Data General has destroyed evidence or has acted in bad faith with regard to the source code. On the contrary, the parties have already exchanged original object code versions of selected ADEX and ADEX related programs, Data General has offered to undertake the task of compiling the source code for the initial ADEX program (Grumman declined the offer), and Data General has stated that it will offer at trial original object code tapes for each revision of ADEX. Finally, in *Seiler* the central question was whether the defendant copied or otherwise infringed the plaintiff's drawings. In this case, however, Grumman has already admitted to copying various versions of the ADEX program.

In its supplemental memorandum based on new case law, Grumman argues that *Computer Assoc. In'tl., Inc. v. Altai, Inc.*, 23 U.S.P.Q.2d 1241, 1992 WL 139364, 1992 U.S.App. Lexis 14305 (2nd Cir.1992), requires this court to analyze the source code for the copyrighted work to determine both whether the defendant infringed the material actually registered and whether the expression embodied in the program is subject to copyright protection. Grumman impermissibly attempts to stretch the holding of *Computer Associates* to apply to this action.

The plaintiff in *Computer Associates* brought two copyright actions. In the first action, the defendant admitted that it had directly copied portions of plaintiff's software and had incorporated the material into its own software program. The district court found that the defendant infringed the copyright. *Id.*, 1992 WL 139364 at *1, 1992 U.S.App. Lexis 14305 at *3–4. The appeal related only to the second claim: the plaintiff argued that a second of the defendant's software programs, which was developed without directly copying plaintiff's software, nonetheless infringed plaintiff's copyright because the program's structure was substantially similar to the copyrighted material. In addressing the "question of whether and to what extent the 'non-literal' aspects of a computer program, that is, those aspects that are not reduced to written code, are protected by copyright" the circuit court articulated a three step test which, in part, involved a detailed comparison of each program's code. *Id.*

The complex test announced by the court and such a detailed code examination are not applicable to the case before this court. Grumman has admitted to taking copies of ADEX and reproducing and using them without modification. Since Grumman has directly copied ADEX, there is no need to confront the more difficult issue of evaluating "non-literal" elements of a program.

Grumman's Motion For Leave To File Its Motion To Dismiss Data General's Copyright Infringement Claims and the Motion To Dismiss Data General's Copyright Infringement Claims are denied. Grumman's Motion To Dismiss Data General's Misappropriation Of Trade Secret claims and To Compel Production Of Diagnostic Software And Related Material are based on similar reasoning and are denied for the reasons discussed above. Grumman's Motion For Leave To File Supplemental Memorandum Based On New Case Law is unopposed and is allowed.

## II  Grumman's Motion For Reconsideration Of Monopolization Claims

On February 27, 1991, 761 F.Supp. 185, I analyzed Grumman's claims for monopolization under § 2 of The Sherman Act and concluded that there was insufficient evidence to present a genuine issue for trial. Grumman then moved this court to reconsider its judgment. I denied the motion on May 2, 1991. Grumman now seeks reconsideration a second time based on the Supreme Court's recent decision in *Eastman Kodak, Co. v. Image Technical Serv., Inc.,* —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). *Kodak* does not alter my prior decision on the monopolization claims. As stated in my order of September 10, 1992, the *Kodak* holding on market power does not change the evidentiary burden placed on Grumman with respect to establishing exclusionary conduct. My opinion has not changed: Grumman has failed to produce adequate evidence to raise a genuine issue of material fact on the element of exclusionary conduct.

Grumman's Motion For Reconsideration Of Granting Summary Judgment In Favor Of Data General On Grumman's Claims For Monopolization And Attempt To Monopolize is denied.

## III.  Grumman's Motion In Limine To Exclude Evidence Regarding Invocation Of Fifth Amendment By George Tasso.

George Tasso, a former employee of Data General and a current employee of Grumman, asserted his Fifth Amendment privilege against self-incrimination during his deposition in this case. Grumman objects to admission of this evidence at trial on grounds that it is improper to use an employee's assertion of the privilege to draw a negative inference that Grumman obtained ADEX by improper means. In addition, Grumman objects that this evidence is irrelevant and, if admitted, would unfairly prejudice Grumman's defense.

Grumman's argument—based in large part on a case quotation that was apparently strategically edited to omit important limiting language [2]—is unpersuasive. If Grumman cannot support an argument with existing case law, it ought to forgo the argument and preserve its credibility rather than present this court with questionable, misleading case citations. Grumman's Motion In Limine To Exclude Evidence Regarding Invocation Of Fifth Amendment By George Tasso is denied without prejudice.

## IV  Miscellaneous Discovery Motions

Grumman's Motion To Compel The Resumption Of The Deposition Of Edward H. Gove is mooted by my order of September 10, 1992, dismissing Grumman's counterclaims and affirmative defenses. Moreover, Grumman can adequately prepare for trial because it has already deposed Gove for two days and has had the opportunity to review voluminous transcripts from Gove's testimony in related cases. If Gove testifies at trial, I will then consider and rule on the relevance of testimony concern-

**2.** Grumman cited *Veranda Beach Club, Ltd. v. Western Sur. Co.,* 936 F.2d 1364 (1st Cir.1991). The underlined language appeared in the original case, but was omitted from the Grumman quotation:

"Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation." ... In a civil case, therefore, an individual's assertion of a personal privilege against self-incrimination cannot, *without more,* be held against his corporate employer *in circumstances analogous to those at the bar.*

*Id.* at 1374 (citation omitted).

ing the change in the ADEX logo, and the existence and alleged waiver of the attorney-client privilege.

A number of discovery motions were referred to a magistrate judge for consideration and decision. Due to the unavailability of the magistrate judge, the motions were not acted on in a timely manner. My Memorandum and Order of September 10, 1992, and the passage of time have mooted many of the motions. To the extent the motions have not been mooted, they are denied. Accordingly, Grumman's Request For A Discovery Conference On Order To Compel Production Of Documents Responsive To Grumman's Eighth Request For Production And To Resolve Related Discovery Disputes, Data General's Motion To Compel Substantive Responses To Its Tenth And Twelfth Requests For Production And Eleventh Set Of Interrogatories, Grumman's Motion to Extend Time To Answer Expert Interrogatories, Data General's Motion To Compel Production Of Documents, Grumman's Motion To Compel Substantive Responses To Its Thirteenth And Fourteenth Sets Of Interrogatories, and Grumman's Motion To Determine The Sufficiency Of Data General's Answers To Grumman's First Request For Admissions are mooted and/or denied.