**OSKAR SYSTEMS, LLC**

v.

**CLUB SPEED, INC. et al.**

**CV 09–3854 AHM (SHx).**

United States District Court,
C.D. California.

Aug. 26, 2010.

Ronald P. Oines, Alejandro S. Angulo, Rutan & Tucker LLP, Costa Mesa, CA, for Plaintiff.

David C. Baker, Hart King & Coldren, Santa Ana, CA, for Defendants.

**Proceedings:** IN CHAMBERS
(No Proceedings Held)

A. HOWARD MATZ, District Judge.

## I. INTRODUCTION

On May 29, 2009, Plaintiff OSKAR Systems, LLC ("Plaintiff" or "OSKAR") filed this suit with one claim for copyright infringement against Club Speed, Inc. ("Club Speed"), Eric Novakovich, Pole Position Raceway, Inc. ("Pole Position"), P2R Karting, Inc. ("P2R"), Ken Faught, and Jason Williams (collectively, "Defendants"). OSKAR alleges that Defendants infringed its copyright in source code for a computer program (the "Oskar Software") used in the operation of go-kart tracks.

On November 18, 2009, the Court struck Plaintiff's claims for statutory damages and attorneys' fees, pursuant to Defendants' motion for judgment on the pleadings. On March 8, 2010, the Court granted Plaintiff's attorneys' motion to withdraw as counsel. On March 22, 2010, Defendants moved to dismiss for lack of prosecution because Plaintiff had not yet retained new counsel. The Court denied that motion as moot on June 16, 2010 after Plaintiff retained new counsel. In the in-

terim, a settlement conference was conducted. Defendants Club Speed and Novakovich have apparently settled with Plaintiff (although no official notice of settlement has been filed), but the other Defendants-namely Pole Position, P2R, Faught, and Williams (collectively the "Pole Position Defendants")-did not reach a settlement with Plaintiff. After the settlement conference, the Pole Position Defendants also retained new counsel. On June 21, 2010, the Pole Position Defendants brought the instant motion for summary judgment.

For the following reasons, the Court GRANTS the Motion[1] and awards summary judgment to the Pole Position Defendants.

## II. FACTS

For ease of reference, the Court has organized the pertinent facts into a chronology.

| Date | Event |
| --- | --- |
| 2000 | Michael Conte, a senior executive at Microsoft, forms Champs Karting, LLC ("Champs"), which operated indoor go-kart racing tracks in the Seattle, Washington area. SUF ¶ 1. At the time, Champs was wholly owned by Contemporary Systems, Inc. ("CSI"), which is owned by Conte. SGI ¶ 37. |
| Late 2001–early 2002 | Conte has CSI author a computer software program (the "Oskar Software") to be used in connection with Champs's go-karting facilities. SUF ¶¶ 2–3, SGI ¶ 39. The software has since been updated from time-to-time, but it includes a tool called a "data trail," which can track the revisions of the software over time. SGI ¶¶ 46–50. |
| 2002 (or possibly later)—2006 | CSI begins marketing the Oskar Software to third-party businesses operating go-kart tracks. SUF ¶ 3. |
| 2005 | Defendants Faught and Williams form Defendant Pole Position Raceway. SUF ¶ 7. Pole Position operates an indoor go-kart track in Corona, California. SUF ¶ 8. (Faught and Williams later (it is undisclosed when) formed Defendant P2R Karting, Inc. for the purpose of licensing the Pole Position Raceway brand and business strategy to other entities interested in developing go-kart tracks throughout the country. Faught Decl. ¶ 4.) |
| June 14, 2005 | Pole Position licenses the Oskar Software from CSI for a one-year term. SUF ¶ 12; Faught Decl. ¶ 6. |
| August 2005 | The Oskar Systems software is installed at Pole Position's Corona location. SUF ¶ 13. The parties dispute whether Defendants had a way to access the source code (in order to be able to copy it, as Plaintiff alleges happened). *See* SGI ¶¶ 14, 15, 16, 22. |
| January 2006 | Faught and Williams decide to hire Defendant Eric Novakovich (who at the time maintained Pole Position's separate internal computer network) to design and develop a replacement software to operate its track. SUF ¶ 18, SGI ¶ 81. |
| Between January 2006 and August 2006 | The replacement software, eventually named Speed Sheet, is developed. SUF ¶ 18; SGI ¶ 85. |
| August 2006 | Pole Position declines to renew its license for the Oskar Software, and fully implements the Speed Sheet software. SUF ¶¶ 19–20; Faught Decl. ¶ 9; SGI ¶¶ 101–102. |
| December 22, 2006 | Plaintiff OSKAR Systems, LLC is formed. SUF ¶ 4. |

1. Docket No. 97.

| | |
|---|---|
| October 1, 2007 | CSI transfers "all of its business assets related to 'Oskar' business operations" to Plaintiff Oskar Systems.  Conte Decl. ¶ 5, Ex. A. |
| 2008 | Plaintiff OSKAR Systems begins marketing the Oskar Software.  SUF ¶ 5. |
| February 17, 2009 | Plaintiff first registers a claim of copyright in the Oskar Software.  SUF ¶ 28.  That registration states that OSKAR Systems, LLC authored the work at issue, that the work at issue was completed in 2002, and that the work was not previously registered.  SUF ¶¶ 28, 30–32.  The copy of the source code submitted with the copyright office was a portion of the source code as it existed in the latter part of 2008.  Livni Decl. ¶ 5. |
| May 29, 2009 | Plaintiff files the instant lawsuit. |
| June 21, 2010 | Defendants file the Motion for Summary Judgment now before the Court. |
| July 2, 2010 | Plaintiff submits a Supplemental Registration to the Copyright Office, attempting to update its registration to reflect that the work deposited in its initial 2009 registration is a derivative, rather than an original work.  Angulo Decl. ¶ 12, Ex. I. |

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is material if it could affect the outcome of the suit under the governing substantive law.  *Id.* at 248, 106 S.Ct. 2505.  The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R.*

*Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  The moving party need not disprove the other party's case.  *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.  Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  Summary judgment will be entered against the non-moving party if that party does not present such specific facts.  *Id.* Only admissible evidence may be consid-

ered in deciding a motion for summary judgment. *Id.*; *see also Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton–Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.1985).

## IV. DISCUSSION

### A. Plaintiff OSKAR Systems Lacks Standing to Sue for Copyright Infringement that Occurred Prior to December 22, 2006.

█  As Plaintiff acknowledges, Defendants developed the allegedly infringing software program between January 2006 and August 2006. SGI ¶ 14. Plaintiff OSKAR Systems, LLC was formed on or about December 22, 2006. SUF ¶ 4. In 2007, CSI transferred the entire licensing business, including Oskar Software and the copyright therein, to Plaintiff. Pl's Add'l Facts ¶ 42. The evidence that Plaintiff has come forth with to demonstrate that such an asset transfer occurred is in paragraph five of the Declaration of Mike Conte, and Exhibit A attached thereto. The document attached as Exhibit A provides, in relevant part:

> RESOLVED, in exchange for an initial capital contribution of all of its business assets related to "Oskar" business operations *including those described on Exhibit A,* Contemporary Systems, Inc. elects to become the initial and sole member of Oskar Systems, LLC, effective October 1, 2007.

(emphasis added). Plaintiff has not produced the "Exhibit A" referred to in Exhibit A to Conte's Declaration. Defendants argue that because Plaintiff has not provided the referenced "Exhibit A," it is unclear whether the copyright in the Oskar Software was properly transferred from CSI to Plaintiff. *See* Reply at 8–9. This argument is without merit. Conte declared that the Oskar Software was transferred and Exhibit A to his declaration clearly specifies that all assets related to "Oskar" business operations were to be transferred. However, the Pole Position Defendants are correct that because the alleged infringement occurred before the CSI assets were assigned to Plaintiff, and because the assignment does not expressly include causes of action for infringement, Plaintiff lacks standing to bring the claims which it asserts in the Complaint.

█  "Only the copyright owner, or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, has standing to bring an action for infringement of such rights." 3–12 Nimmer on Copyright § 12.02[B]. "A grant of copyright, even if it purports to convey 'all right, title and interest,' is generally construed not to assign existing causes of action unless such causes of action are expressly included in the grant." *Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp.2d 1020, 1033 (C.D.Cal.2007) (Snyder, J.) (finding that plaintiff could not sue

for infringement that occurred prior to assignment of assets from predecessor company where the assignment "did not expressly convey [the predecessor company's] existing claims for infringement"). *See also* Nimmer on Copyright § 12.02[B] ("An infringer can extinguish its liability by obtaining a retroactive grant from one of the copyright owners. Absent that unusual circumstance, only the grantor, not the grantee, has standing to sue for pregrant infringement, even if the action is filed after the grant has been executed. This conclusion follows from the fact that a grant of copyright—even if it purports to convey 'all right, title and interest'—is generally construed not to assign existing causes of action, unless expressly included.").[2] This is true even where the assignor and assignee are related companies. *Lanard*, 511 F.Supp.2d at 1033.

Plaintiff objects to Defendants' arguing this point because, Plaintiff contends, it was raised for the first time in Defendants' reply memorandum. Not so. Although Defendants did not cite *Lanard*, a case on which it relied heavily in its Reply, Defendants did argue that Plaintiff lacks standing to sue for infringement because it has not offered evidence of assignment of the relevant copyright interest. Mot. at 8:26–27. Defendants' moving papers quoted Nimmer for the proposition that "[o]nly the copyright owner, or the owner of exclusive rights under the copyright, *as of the time the acts of infringement occur,*

has standing to bring an action for infringement of such rights." Motion at 8:16–18 (emphasis added). The moving papers further argued that CSI (or Mr. Conte) owned the copyright in the work at issue when the alleged infringement occurred, and concluded that "[because] plaintiff evidently has no evidence of any assignment of the relevant copyright interest … plaintiff appears to lack standing to proceed with its claim…." *Id.* at 8:26–9:1. Accordingly, Plaintiff had fair notice of the argument and opportunity to respond.

## B. Plaintiff Has Not Demonstrated That The Copyright Registration It Obtained Enables it To Sue On a Work that Existed Before The Deposited Work Was Created.

The Pole Position Defendants argue another reason why Plaintiff lacks standing to pursue its infringement claim: Plaintiff has failed to deposit with the Copyright Office two copies of the work that it now argues forms the basis for its infringement action. Plaintiff initially obtained a copyright for the "OSKAR Go Kart Business Software." The registration certificate for that work was issued on February 17, 2009. It states that the work was initially published on March 1, 2002 and completed in 2002. Compl., Exh. D. Plaintiff, however, submitted for its registration a portion of the source code of the Oskar Software as it existed in the latter part of 2008.[3] Apparently realizing that

---

**2.** Nimmer does note "[t]o the extent that a grant, such as a general assignment, does not include accrued causes of action, the defect may be cured to the extent that the grantor is willing to execute a second grant, appropriately worded, prior to trial." § 12.02[B] Before the hearing on this motion, Plaintiff had not raised this possibility or stated that it had any intention of securing such a grant from CSI. After the hearing, the Court reviewed the cases cited by Nimmer. They are distinguishable. In neither case—*Intimo, Inc. v. Briefly Stated, Inc.*, 948 F.Supp. 315 (S.D.N.Y.1996)

or *Infodek, Inc. v. Meredith–Webb Printing Co.*, 830 F.Supp. 614 (N.D.Ga.1993)—did the plaintiff before securing the assignment and providing evidence thereof, wait until after the expensive and time-consuming exchange of summary judgment papers had been completed (not to speak of the Court having reviewed those papers and issued a fourteen-page tentative order).

**3.** Defendants state that the source code presented to the copyright office was from August 22, 2007. However, Plaintiff presents evidence—and Defendants agree in their Re-

the deposit of a later version of the work might not satisfy the deposit requirement for a work allegedly created years earlier, on July 2, 2010—the day before it filed its opposition to the present motion—Plaintiff filed paperwork with the copyright office to supplement the original registration to identify the registered work as a derivative work. Angulo Decl. Exh. I. The July 2, 2010 supplement states "This particular work is actually a derivative work of prior versions of the same computer program and therefore, the actual date of completion for this particular version is 2008, with a publication date of October, 2008." *Id.* Oskar claims that it "inadvertently" failed to identify in the initial 2009 registration that the version of the Oskar Software it was registering was a derivative work, and failed to include the correct dates for the completion and publication of the work. Livni Decl. ¶ 5. OSKAR now claims that because the work it registered is actually a derivative, the registration covers any preexisting work upon which the derivative is based. Defendants contend that notwithstanding the 2010 supplemental copyright registration, Plaintiff still has failed to demonstrate that it fully complied with the registration requirement because the alleged copying occurred before the deposited version of the work even existed.

### 1. Requirement of deposit of a bona fide copy of the original

■ Pursuant to the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made" with the Copyright Office. 17 U.S.C. § 411(a). A certificate of registration that is obtained within five years of publication is *prima facie* evidence of the validity of the copyright, and "the evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c). As part of the registration requirement, copyright owners must deposit two copies of the work to be registered. The deposit must be of "bona fide copies of the original work," and cannot be a reconstruction of the original work. *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1211 (9th Cir. 1998) (drawings made in 1993 from memory of drawings originally made in 1991 did not satisfy deposit requirement because they were not made by "directly referring to the originals," nor were they "bona fide copies of the originals"). In *Kodadek,* the plaintiff, Kodadek, sued MTV for infringing his alleged copyright in the two animated characters on which MTV's animated series "Beavis and Butthead" was based. Beavis and Butthead first aired in 1993, and Kodadek subsequently filed for a copyright registration of the two characters, which he claimed he created in 1991. The issue in *Kodadek* was whether Kodadek's deposit of a reconstruction (sketched in 1993) of the original images in which he was asserting a copyright (allegedly sketched in 1991) complied with the registration deposit requirement. The court found that because Kodadek's 1993 drawings were made from his memory of the 1991 drawings, and not made by "directly referring to the originals," they were not "bona fide copies of the originals." *Id.* at 1212. Thus Kodadek could not use the 1993 drawings to obtain a copyright registration in the 1991 drawings. *Id. Accord Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316, 1322 (9th Cir.1986) (finding that deposit of a recreation of an original drawing did not satisfy the deposit requirement).

---

ply at 3–4—that the portion of the source code submitted with the copyright registration was from the latter part of 2008. Livni Decl. ¶ 5.

Plaintiff argues *Seiler* (and, presumably, *Kodadek* ) is "irrelevant" because the present case does not involve any recreation of the copyrighted work, nor is there any claim that Plaintiff acted in bad faith or destroyed the original. Plaintiff cites *Data General Corp. v. Grumman Systems Support Corp.*, 803 F.Supp. 487 (D.Mass. 1992), in which the district court declined to follow *Seiler* and held that the plaintiff's failure to produce a software program's original source code did not preclude it from proving its claim for copyright infringement of that software program. In *Data General,* the court noted that unlike in *Seiler,* there was no suggestion that Data General destroyed the original source code. *Id.* *Data General* did not discuss *Kodadek,* in which there was no evidence of bad faith, and in which the Ninth Circuit reached the same conclusion as it did in *Seiler.* Additionally, the *Data General* decision rested on facts not present here. To start with, the court noted that the parties had already exchanged original "object code" versions of the allegedly infringed software, and Data General offered to compile the source code for the original program. *Id.* Moreover, the court noted, " 'Because the object code is the encryption of the copyrighted source code, the two are to be treated as one work ...' " *Id.* at 490 (quoting *GCA Corp. v. Chance,* 217 U.S.P.Q. 718, 720 (N.D.Cal.1982)). Here, by contrast, no similar showing has been made.[4] Finally, the court noted that unlike the defendant in *Seiler* (and unlike Defendants here), Grumman already admitted to copying various versions of the plaintiff's software. *Id.*

2. *The exception permitting deposit of a derivative is inapplicable to the present facts*

Plaintiff contends that its deposit of the 2007/08 source code is sufficient to satisfy the registration requirement because it is a derivative of the work which Defendants allegedly infringed.

■ Although a derivative work is independent of a preexisting work upon which it is based, *see* 17 U.S.C. § 103(b) ("... The copyright in [a compilation or derivative] work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."), registration of a derivative of a pre-existing work can, in certain circumstances, suffice to register the original work upon which the derivative is based. "While the Ninth Circuit has not decided this issue, the Second Circuit has determined that in general, a registered copyright in a derivative work (such as a catalog containing photographs of items) necessarily encompasses all the original works within the derivative work, if the owner of the copyright in the derivative work also holds all ownership rights in the original works upon which the derivative works are based." *Bespaq Corp. v. Haoshen Trading Co.,* 2005 WL 14841 *2 (N.D.Cal. Jan. 3, 2005). In *Streetwise Maps, Inc. v. Van-Dam, Inc.,* 159 F.3d 739 (2d Cir.1998), map publisher Streetwise sued for infringement of its copyright in a map of New York City. At trial, the plaintiff relied on a certificate of registration filed in 1989 that stated the work it protects is a derivative of a "Streetwise Manhattan map carrying

---

4. Plaintiff has produced a "revision control system" or "data trail," which is a "historical data base that shows the creation of the software from start to finish, including all revisions made to such software at different points in time." SGI ¶ 33. Plaintiff's expert, C. Douglass Locke, does not specify in his report upon which versions of the software his opinion of infringement is based. Livni testifies that the code that formed the basis for Dr. Locke's opinion is a "snapshot" of the code as it existed at a particular time in 2007 (after the alleged copying occurred). Livni Decl. ¶ 7.

a copyright notice date of 1984, 1985." *Id.* at 746. The "supposed additions to the earlier map were depictions of the subway and bus systems," and the defendants argued that the 1989 registration certificate covered only the "subway and bus notations on the 1988 map, and not the pre-existing map referred to in the certificate." *Id.* at 746–47. The Second Circuit rejected this argument, explaining that

> because Streetwise is the owner of the copyright of both the derivative and preexisting work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work. That plaintiff need not produce a separate registration relating to the pre-existing work is a proposition which finds support in other courts and in the writing of scholarly commentators.

*Id.* at 747. *Accord,* William Patry, 5 Patry on Copyright § 17:89 (March 2010) ("Where the original work is unregistered but the derivative work is registered and the same party owns both the original and the derivative work, registration of the derivative work provides subject-matter jurisdiction to sue for infringement of both works so long as the infringed preexisting material is also contained in the derivative work.").

Defendants argue that the doctrine referenced in *Streetwise Maps* has "no relevance to what plaintiff is attempting here," because "plaintiff does not allege that any defendant infringed *the derivative work itself.*" Reply at 11. In *Streetwise,* the alleged copying occurred *after* the derivative work was fixed in a tangible medium and registered with the Copyright Office. *Streetwise,* 159 F.3d at 741 (alleged infringement of map occurred in 1995, where original map was created in 1984 and 1985 and derivative work was registered in 1989). Here, by contrast, the alleged

copying occurred *before* the deposited version of the work even existed. Plaintiff has not pointed to any authority that supports what it is attempting here—to register and sue on a version of a software program that was created *after* the version that Defendants allegedly copied, by belatedly characterizing the registered work as derivative of an earlier work that was created before the alleged infringement. The registration requirement serves in part both an evidentiary function and to protect against fraud. As Defendants point out, each of the plaintiffs in *Seiler* and *Kodadek* could have circumvented their inability to deposit a *"bona fide* copy" of their pre-existing original work simply by depositing with the copyright office a derivative work and claiming that the defendants had infringed material carried over into the derivative work from the pre-existing one, even though the defendants' alleged infringement had commenced before the derivative was created. Adopting such a rule would frustrate the purpose of copyright registration and open the door to fraud.

Another consideration that compels the Court to find that Plaintiff's supplemental copyright registration fails to register the 2002 version of the Oskar Software on which Plaintiff now sues is that even the supplemental registration fails to identify the precise work or works from which the registered version is derived or compiled. Other courts have found registration of a derivative work insufficient to encompass the original, preexisting work where the registration certificate failed to properly identify the original work from which the subsequent work was derived (and upon which the infringement claim was based). In *I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.,* 307 F.Supp.2d 521 (S.D.N.Y.2004), for example, the plaintiff sought to enforce the copyright in material on a website. The material that was allegedly infringed exist-

ed on the website in 2002. The material for which the plaintiff obtained copyright registration, however, was from a 2008 version of the website. The registration certificate indicated that the registered work was a compilation. Nonetheless, the court held:

> Whether the Registration Certificate is viewed as one for a derivative work, a compilation of other works, or a work that contains "pre-existing underlying matter" ... it does not cover the content and matter that was allegedly infringed in March of 2002. Under the authority of *Well–Made* and *Streetwise Maps*, we find that the portion of the Registration Certificate requiring the identification of "Preexisting Material" would have to refer to the preexisting matter that is the basis of this infringement action. Unlike the plaintiff in *Streetwise Maps*, the plaintiff here does not identify the preexisting work that is the foundation of this action. *See Well–Made*, 354 F.3d 112, 115–16. And like in *Well–Made*, "the copied work here is not listed in any copyright registration." *Id.*

> \*    \*    \*

> The inclusion of the response "Text and artwork; compilation" under the subheading "Material Added to This Work" likewise does not sufficiently advance plaintiff's position. This information gives no indication of what precise underlying or preexisting work was supplemented as the previous section calling for the designation of any preexisting work on which the registered work is based is left blank.

*Id.* at 529.

Although Plaintiff's supplemental registration did more than simply state that the registered work is a derivative, it fails to indicate the "precise underlying or preexisting work" from which the deposited (and registered work) was derived. Section 409 of the Copyright Act requires that an application "include ... in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered [.]" 17 U.S.C. § 409(9). Here, Plaintiff's corrected registration states only that "[t]his particular work is actually a derivative work of prior versions of the same computer program and therefore, the actual date of completion for this particular version is 2008, with a publication date of October, 2008." Angulo Decl. Exh. I. It fails to identify upon which prior version(s) of the program the registration is based and when those prior versions were created (or whether the version was one that existed before or after the alleged copying occurred), what the additional material the derivative is claiming, etc. Even the updated registration does not provide this information, and thus, it does not encompass the preexisting work that forms the basis for Plaintiff's lawsuit.[5]

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment. The moving Defendants are instructed to lodge a [Proposed] Judgment by not later than five days from the date of this Order.

---

5. It appears from the supplemental registration that Plaintiff did not fill in or amend questions 6(a) or 6(b) of the application, "which require an applicant to make the disclosure mandated by § 409." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir.2003).